UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

DEWANNIA VAUGHN,            )
    Plaintiff,            )
               )
    v.            )            Case No: 1:12-CV-81
               )            Collier/Carter
MICHAEL S. ASTRUE,            )
Commissioner of Social Security,            )
    Defendant.            )

### REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the

disposition of Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for

Summary Judgment (Doc. 14).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner

be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was forty-eight years old as of the date he was first eligible to be found disabled,

October 24, 2008 (Tr. 32, 250). Plaintiff reported that he last worked in November 2006. He

had past relevant work as an assembly technician (Tr. 32, 285-86). Plaintiff has a high school

level education with some college (Tr. 32, 289).

Applications for Benefits

Plaintiff protectively filed for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) on November 7, 2008. He is alleging disability due to a neck injury and left knee problems which prevent him from lifting anything (Tr. 285). (Tr. 18, 250-59).[1] Plaintiff's applications were denied initially and upon reconsideration (Tr. 147-49, 152-59). Subsequently, Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on March 9, 2010 (Tr. 78-102). The ALJ issued a decision on May 11, 2010 finding Plaintiff not disabled. The Appeals Council vacated the decision on March 25, 2011, after Plaintiff requested review (Tr. 122-46). The ALJ held a supplemental hearing on June 7, 2011, and issued a second decision on June 21, 2011 finding Plaintiff not disabled (Tr. 15-38, 39-55). Plaintiff requested review of the ALJ's June 21, 2011 decision. The Appeals Council denied Plaintiff's request on January 17, 2012 (Tr. 1-3, 12-14). Plaintiff filed a complaint in this Court on March 16, 2012. This case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3)

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20

---

[1]Plaintiff previously filed applications for DIB and SSI on January 19, 2007 (Tr. 106). After a hearing, an ALJ denied these claims on October 23, 2008 (Tr. 106-14). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and Plaintiff did not seek judicial review (Tr. 117-19). Therefore, the ALJ's October 23, 2008 decision is final and binding. See 20 C.F.R. §§ 404.955, 416.1455 (2012).

2

C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir.

1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health

and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since October 24, 2008 (20 CFR 404.1571 *et seq.*, and 416.971 *et seq*).

3. The claimant has the following "severe" impairments: history of degenerative disc disease of the cervical spine; a history of degenerative joint disease of the cervical spine; and a history of left knee pain (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals in severity the criteria of any impairment(s) specified in the Listing of Impairments 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Applying the function-by-function analysis required by SSR 96-8p and 20 CFR 404.1545, 416.945 and after careful consideration of the entire record including all "severe" and "non-severe" impairments substantiated in the medical and other evidence of record, I find that the claimant has the residual functional capacity to perform unskilled light work with the ability to lift/carry up to 10 pounds frequently and 20 pounds occasionally and stand and/or walk up to 4 hours and/or sit for 6-8 hours during an 8-hour period with normal breaks. He has adequate fine and gross coordination/manipulation of the upper extremities with the ability to push/pull, grasp, reach, finger, handle, and feel. He has adequate ability to maneuver the spine to bend, twist, stoop, kneel, and crouch. He should not climb or crawl. There is adequate ability to see, hear, and speak. There is adequate ability to interact appropriately with supervisors, coworkers, and the general public in the performance of competitive work. Although somewhat limited by pain and other symptoms, there nevertheless is an adequate ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (20 CFR 404.1567(b) and 416.967(b)).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 3, 1960, and was 48 years old,

4

which is defined as a "younger person" (age 18-49), on the earliest possible onset date of disability. His present age category (at age 50) is defined as a "person closely approaching advance age" (20 CFR 404.1563 and 416.963).

8.  The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are full-time jobs that exist in significant numbers in the regional/national economy that the claimant can perform on a regular and continuing basis (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a "disability," as defined in the Social Security Act and implementing regulations, from October 24, 2008, through the date of this decision (20 CFR 404.1520(a)-(g) and 416.920(a)-(g)).

(Tr. 21-34).

### Issue Presented

1)  Whether the ALJ's Decision Finding Plaintiff not Disabled is Supported by Substantial Evidence and in Accordance with Law. Specifically, Plaintiff argues there was an incorrect application of the *Drummond* rule and the "treating physician rule."

### Relevant Facts

After consideration of the entire record, the ALJ found Plaintiff had the following severe impairments: a history of degenerative disc disease of the cervical spine; a history of degenerative joint disease of the cervical spine; and a history of left knee pain (Tr. 21, finding no. 3). The ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled a listed impairment (Tr. 21, finding no. 4). The ALJ found that with his impairments Plaintiff had the residual functional capacity to perform light work such that he could "lift/carry

5

up to 10 pounds frequently and 20 pounds occasionally and stand and/or walk up to 4 hours and/or sit for 6-8 hours during an 8-hour period" (Tr. 21, finding no. 5). The ALJ also found Plaintiff could not climb or crawl and that he was limited to simple job instructions (Tr. 22, finding no. 5). With the assistance of a vocational expert, the ALJ found Plaintiff could not perform his past relevant work but other work existed in significant numbers that he could perform (Tr. 32-33, finding nos. 6, 10, 52-53). The ALJ, therefore, found Plaintiff not disabled (Tr. 34, finding no. 11).

Plaintiff's primary medical impairments involve his neck and upper extremities. Plaintiff had complained of pain for a number of years, and was assigned a 20% Veteran's Administration ("VA") disability rating due to injuries sustained in service related activities (Tr. 375). April 21, 2008, x-rays showed mild straightening of the usual cervical lordosis, no prevertebral soft tissue swelling, fractures, or subluxations, fairly marked disc space narrowing and mild anterior and posterior marginal osteophyte formation at C5-6, with similar but slightly less pronounced changes at C6-C7. Impression was moderate degenerative changes in the cervical spine, most pronounced at C5-6, due to degenerative hypertrophic bony changes, an element of neuroforaminal stenosis was shown at several levels, and very slight progression of prior disc space narrowing at C5-6 (Tr. 369). On November 21, 2008, Plaintiff was examined by Dr. Joel Hoag. He reviewed a November 3, 2008, MRI of the cervical spine which showed mid to lower cervical spine degenerative changes with canal and neuroforaminal stenosis. There was moderate reduction of active range of motion with negative Spurling sign. Neurologically there was no upper or lower extremity motor wasting identified. Sensation in the upper extremities were grossly normal to light touch. The impression was that neck pain was probably related to cervical spine spondylosis. Pain management was recommended (Tr. 349, 350). The study

6

showed mild diffuse bulging of the annulus with partial effacement of the anterior CSF space at the C3-C4 level.  There was no cervical spinal cord compression with mild right neural foraminal stenosis secondary to uncovertebral joint hypertrophy.  At C4-C5 there was diffuse bulging of the annulus with some endplate hypertrophy.  There was no significant neural foraminal stenosis.  At the C5-C6 level there was significant loss of disc space with diffuse bulging of the annulus and endplate hypertrophy with moderate bilateral neuroforaminal stenosis, secondary to uncovertebral joint hypertrophy.  At the C6-C7 level there was minimal diffuse bulging of the annulus with no significant canal stenosis.  There was mild bilateral neural foraminal stenosis secondary to uncovertebral joint hypertrophy.  Signal of the cervical spinal cord was normal (Tr. 368).

Plaintiff received his initial treatment at the VA.  He complained of neck pain and stiffness radiating into his shoulders and arms (Tr. 349, 560).   A physical examination of July 7, 2009 showed positive pain with range of motion, guarding, and tenderness in the cervical spine. Plaintiff's gait was normal (Tr. 457).  It was noted there was objective evidence of pain with repetitive neck motion. At C3-C4 there was mild right neural foraminal stenosis secondary to uncovertebral joint hypertrophy.  At C4-C5 there was diffuse bulging of the annulus with some endplate hypertrophy, effacement of the anterior CSF space with mild flattening of the anterior aspect of the cervical spinal cord but no significant neural foraminal stenosis.  At C5-C6 there was significant loss of the disc space and diffuse bulging of the annulus with endplate hypertrophy.  There was moderate bilateral neural foraminal stenosis secondary to uncovertebral joint hypertrophy.  At C6-C7 there was minimal diffuse bulging of the annulus and no significant canal stenosis but mild bilateral neural foraminal stenosis secondary to uncovertebral joint hypertrophy (Tr. 460).  The VA made a referral to a pain management physician.  At that time

7

the impression was neck pain probably related to cervical spine spondylosis (Tr. 350).

Plaintiff saw Dr. Thomas Miller for evaluation and management of cervical pain (Tr. 436). On February 2, 2009, Dr. Miller conducted his initial evaluation of Plaintiff. The cervical spine was normal to inspection. There was tenderness in the cervical spine from C3-C7, mild to moderate; restricted range of motion and severe posterior neck pain bilaterally. The right and left upper extremity and right and left lower extremity were normal inspection/palpation, ROM, muscle strength and tone and stability (Tr. 437, 438). Plaintiff's general appearance was well developed, well-nourished and groomed, with no apparent acute or chronic distress (Tr. 437). His exam showed symmetrical hypothesias (reduced sense of touch or sensation) at the C5 and C6 nerve root distribution that was 50% of normal (Tr. 438). During a September 3, 2009, visit Plaintiff reported his neck pain was doing really well this month, he was able to sleep with a pillow since the last injection. The pain severity was much less severe, pain was rated as mild with functional impairment as mild (Tr. 401). Dr. Miller diagnosed Plaintiff with C3-6 cervical radiculopathy. He reported Plaintiff's general appearance to be well developed and well-nourished and groomed and in no apparent acute or chronic distress. His gait and station were normal (Tr. 402-3, 407). He performed epidural steroid injections at C3-6 (Tr. 407). He also prescribed narcotic pain medication. Ultimately, he dismissed Plaintiff from his practice due to inaccurate pill counts (Tr. 496).

On February, 4, 2009, a consultative examination was conducted by Thomas Mullady, M.D. Plaintiff reported pain radiating into both shoulders, a condition he has had for twenty years caused by a fall through a hatch on a ship while serving in the U.S. Navy. Physical examination of the extremities and spine showed no peripheral edema. There were no gross joint deformities. There was decreased range of motion of cervical spine with forward flexion to 40

8

degrees, extension to 30 degrees, right and left lateral rotation 45 degrees, left lateral flexion to 20 degrees, right lateral flexion to 10 degrees. Range of motion of all other joints including shoulders was within normal limits. Gait was normal as was muscle strength to all extremities. Grip strength and manual dexterity were assessed as normal. Neurologically deep tendon reflexes were present and equal, there were no sensory deficits, no cranial nerve lesions and balance was normal. Plaintiff alleged two neck injuries but Dr. Mullady assessed his range of motion in all other joints including shoulders to be within normal limits. Dr. Mullady assessed Plaintiff to be capable of occasionally lifting and/or carrying for up to one-third of an eight-hour work day a maximum of twenty pounds. He would be able to frequently lift and /or carry from one-third to two-thirds of an eight-hour work day a maximum of ten pounds. He would be able to stand and/or walk with normal breaks for a total of at least four hours in an eight-hour work day and would be able to sit with normal breaks for a total of at least six hours in an eight-hour day.

On May 1, 2009, J.B. Hoag, M.D., who treated Plaintiff in connection with the VA, opined that Plaintiff had limitation of motion of the cervical spine but no motor loss (muscle weakness), no sensory or reflex loss, and he was able to perform fine and gross movements effectively (Tr. 24, 511).

Plaintiff again started treatment at the VA with Dr. Daniel Hamatay. On March 29, 2010, Dr. Hamatay performed a physical examination that showed loss of some sensory discrimination bilaterally at the C5-6 nerve distribution, reduced range of motion in the shoulder joints, and left quad muscle atrophy. He also found tenderness in the cervical spine and abnormal range of motion (Tr. 563). He diagnosed Plaintiff with cervicogenic pain with scapulohumeral myofascial pain due to traumatic compression fracture and herniated nucleus pulposus due to

9

multiple injuries, kyphoscoliosis (irregular curvature of the spine), cervicogenic headaches, and internal derangement of the left knee (Tr. 564). Subsequent physical examinations would continue to reveal reduced cervical range of motion with pain, and decreased sensation in the bilateral upper extremities. On April 20, 2010, Plaintiff was instructed on cervical stretching exercises and relaxation techniques to decrease muscle tension. Both Plaintiff and his wife were instructed on soft tissue massage (Tr. 648). Plaintiff reported significant relief after treatment (Tr. 649). In 2011, Dr. Hamatay treated Plaintiff by prescribing narcotic pain medication, oxycodone, and morphine (Tr. 569).

Dr. Hamatay offered opinions regarding Plaintiff's functional restrictions by completing a Medical statement regarding cervical spine disorders for Social Security disability claim. In terms of symptoms, he checked statements that Plaintiff suffers from neuro-anatomic distribution of pain, limitation of range of motion of the cervical spine, inability to perform fine and gross movements, and the need to change position every two hours. He did not check statements indicating any Motor loss (muscle weakness or atrophy with associated muscle weakness); Sensory or reflex loss; Arachnoiditis, including nerve root swelling, hyperemia or atrophy, intradural scarring, or nerve roots adherent to each other or to dural membrane; or severe burning or painful dysesthesia (Tr. 515). In terms of restrictions, he opined Plaintiff cannot stand or sit for a full 8-hour workday, can only stand for 15 minutes at one time, and can only sit for 30 minutes at one time (Tr. 513). He also stated Plaintiff can only lift 20 lbs occasionally and 5 lbs frequently, and can only occasionally perform gross manipulation with the bilateral hands (Tr. 513). When the vocational expert, Dr. Benjamin Johnston, was asked if those restrictions would allow for employment, he stated that they would not (Tr. 54).

In his second hearing, Plaintiff testified that his conditions had worsened and that his VA

10

disability benefits had increased (Tr. 43). He further testified that he experiences pain when he

moves his head (Tr. 45). He testified his pain was a 9/10 unless on narcotic pain medication (Tr.

47). In reference to narcotic pain medication, he testified that he has to take four oxycodones

and two morphines every day (Tr. 50). He also testified that those narcotic pain medications

cause side effects including severe drowsiness that requires a nap after taking the medicine (Tr.

50). Regarding the use of his upper extremities, Plaintiff testified that three fingers on each hand

are numb, and that he can't repetitively handle small objects (Tr. 48). Finally, Plaintiff testified

that holding large objects or using the upper extremities causes neck pain (Tr. 48-49).

Analysis

The Drummond Issue:

According to Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997), the

Commissioner is bound by a final decision concerning whether a claimant is entitled to benefits,

absent "changed circumstances." Id. at 843-44. Acquiescence Ruling (AR) 98-4 implements

Drummond by directing that adjudicators must adopt findings from the final decision by an ALJ

on a prior claim unless there is new and material evidence relating to such a finding. AR 98-4

(6) (http://ssa.gov/OP_Home/rulings/ar/06/AR98-04-ar-06.html) (Doc. 15, Commissioner's

Memorandum, p. 5). In an October 23, 2008 decision, an ALJ found Plaintiff was limited to light

work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), that does not require

pushing/pulling with the left hand (Tr. 31,109). The current ALJ also found Plaintiff was limited

to light work (Tr. 21-22). However, he did not include a limitation on pushing/pulling (Tr. 21-

22). Instead, the ALJ limited Plaintiff's ability to stand/walk to four hours, precluded Plaintiff

from climbing and crawling, and limited him to simple work (Tr. 21-22). The ALJ

acknowledged the requirements of Drummond and, consequently, explained his basis for finding

11

that Plaintiff no longer had limitations in pushing and pulling (Tr. 31). The ALJ explained that

the medical evidence since October 24, 2008, including Plaintiff's treatment notes from the

Department of Veterans Affairs (VA) and several physicians, did not support a finding that he

had upper extremity limitations (Tr. 31). I conclude this is a finding that Plaintiff's condition

had improved as it related to his ability to push and pull. There were no longer upper extremity

limitations, which was a "change in circumstances" satisfying Drummond.

Other evidence to support the ALJ's conclusion is found in the consultative examination

by Thomas Mullady, M.D. Plaintiff had normal range of motion in all joints including his

shoulder, normal muscle strength in all extremities, normal grip strength, normal manual

dexterity, and no sensory deficits (Tr. 23, 382-83). Dr. Mullady opined on Plaintiff's limitations

and did not provide for any limitations with pushing or pulling (Tr. 383). Further, at multiple

examinations with the VA, Plaintiff had normal movement in his upper extremities, normal

motor function, and normal sensation (Tr. 25, 350, 466, 597, 678). J.B. Hoag, M.D., who treated

Plaintiff in connection with the VA, opined that Plaintiff had no motor loss (muscle weakness),

no sensory loss, and he was able to perform fine and gross movements effectively (Tr. 24, 511).

Plaintiff's success with treatment for his pain symptoms also supports a finding that he did not

have limitations with pushing or pulling. Plaintiff reported to Thomas Miller, M.D. that his

medication was helpful for nearly eliminating his symptoms of pain and that his pain did not

interfere with daily activities (Tr. 24, 401). As shown above, Plaintiff's medical records support

a finding that he had no limitations using his upper extremities. Therefore, substantial evidence

supports the ALJ's finding that Plaintiff no longer needed upper extremity limitations as part of

his residual functional capacity. AR 98-4 (6); Drummond, 126 F.3d at 843-44.

The ALJ also explained the basis for his finding that Plaintiff could still perform a range

of light work (Tr. 31). Specifically, the ALJ explained that the evidence did not indicate "<u>significant</u> deterioration in the claimant's physical condition" (Tr. 31) (emphasis added). The ALJ went on to state that "there is no new and material evidence, under the <u>Drummond</u> criteria, that supports a different residual functional capacity finding in the present matter" (Tr. 31). The ALJ's statement appears contradictory because he did not find a residual functional capability (RFC) identical to the prior ALJ. I agree with the Commissioner that even though the ALJ's statement was imprecise, when taken in context, the ALJ was essentially saying the evidence did not show a "significant" deterioration in Plaintiff's condition; the evidence of record still supported a finding that Plaintiff had an RFC for essentially light work, rather than for sedentary work. I conclude this was a finding that Plaintiff's condition no longer required that limitation as to pushing and pulling because the medical record showed improvement (Tr. 31). This is the change in circumstances required in <u>Drummond</u>.

Plaintiff argues that the seeming contradiction in the ALJ's language merits remand. I do not find remand to be required in this case. Plaintiff has failed to show that the ALJ erred in finding that he no longer needed limitations on pushing/pulling or that the other elements of the RFC finding were not supported by substantial evidence. Therefore, even if the ALJ's language was in error, it appears to be harmless.

Plaintiff also argues the evidence shows that he has limited use of his upper extremities, and therefore, the Medical-Vocational Guidelines (Grids) Rule 201.14 would show that he is disabled (Doc. 13, Plaintiff's Brief at 6). I disagree. As shown above, substantial evidence supports the ALJ's finding that Plaintiff does not have upper extremities limitations. Furthermore, as the Commissioner argues, Grid Rule 201.14 is inapplicable to Plaintiff's case. Grid Rule 201.14 only directs a finding as to whether a claimant is disabled where the claimant's

13

RFC is, at most, for sedentary work. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.14. Plaintiff

has exertional abilities, that is lifting and carrying abilities, consistent with light work, and

therefore, his RFC is properly classified as light (Tr. 21-22). See Social Security Ruling (SSR)

83-14 (http://ssa.gov/OP_Home/rulings/di/02/SSR83-14-di-02.html) (explaining the use of the

Grids and that evaluation of the Grids begins with the claimant's "maximum sustained exertional

work capability "); Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003) (explaining that

where a claimant's RFC is between light and sedentary, the light grid rule provides a framework

for decision-making).[2] Because Plaintiff's RFC exceeds the RFC for which Grid Rule 201.14

applies, the rule could not be used to direct a finding that he was disabled. See id. Thus, I

conclude Plaintiff's argument that Grid Rule 201.14 would direct a finding that he is disabled

fails.

The ALJ properly relied on Grid Rules 202.14 and 202.21, which apply to individuals

with an RFC for light work, as a framework before requesting the testimony of a vocational

expert to determine what work existed that Plaintiff could perform (Tr. 33-34). The ALJ did not

need to include upper extremity limitations in his hypothetical question to the vocational expert

because substantial evidence supported his finding that Plaintiff did not have upper extremity

limitations (Tr. 31). See Jones v. Comm'r of Soc., 336 F.3d 469, 477-78 (6th Cir. 2003).

Therefore, the ALJ properly relied on vocational expert testimony to find Plaintiff not disabled

(Tr. 32-34). See 20 C.F.R. §§ 404.1566(e), 416.966(e); id.

The Treating Physician Rule:

---

[2]Plaintiff argues without explanation that SSR 83-10 shows that if he had limited use of his upper
extremities he is precluded from light work. However, nothing in SSR 83-10 provides that upper
extremity limitations preclude a claimant from performing light work. SSR 83-10
(http://ssa.gov/OP_Home/rulings/di/02/ SSR83-10-di-02.html).

14

The ALJ is not bound by the opinion of a treating physician, Combs, 459 F.3d at 652, and such opinions are given controlling weight as to the extent of a claimant's limitations only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530-31 (6th Cir.1997). A treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985); Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir.1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); Harris v. Heckler, 756 F.2d 431 (6th Cir.1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also* Walters, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. Harris, 756 F.2d at 435. *See also* Cohen v. Secretary of H.H.S., 964 F.2d 524, 528 (6th Cir.1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. Walters v. Commissioner, 127 F.3d 525, 529 (6th Cir.1997); Shelman, 821 F.2d at 321.

15

Social Security Ruling 96-2p further provides that a treating physician's opinion is given controlling weight when: 1) the opinion comes from a "treating source," as defined in 20 CFR 404.1502 and 416.902; 2) is a "medical opinion" as defined in 20 CFR 404.1527(a) and 416.927(a); 3) is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; 4) and the treating source's medical opinion is also "not inconsistent" with the other "substantial evidence" in the individual's case record. "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. Whether a medical opinion is well-supported will depend on the facts of each case." Id. Furthermore, SSR 96-2p defines "not inconsistent" as "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Id.

Additionally, if not entitled to controlling weight, the opinion of a treating physician may also be given less weight based on a variety of factors including whether relevant evidence was presented to support the opinion and whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4).

The Sixth Circuit has consistently stated that [the Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence. Bogle v. Sullivan, 998 F.2d 342, 34748 (6th Cir. 1993).

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of his treating physician Daniel Hamaty, M.D. because his opinions were allegedly supported by

16

appropriate medical evidence (Doc. 13, Plaintiff's Brief at 6-7). I disagree. The ALJ reviewed

Dr. Hamaty's opinions and gave good reasons for not giving his opinions controlling weight (Tr.

25, 27-28). See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Wilson v. Com'r Soc. Sec., 378

F.3d 541, 544 (6th Cir. 2004). After reviewing the medical evidence and Dr. Hamaty's opinions,

the ALJ determined that the opinions were not entitled to controlling weight because Dr. Hamaty

did not explain or support his opinions and his opinion was inconsistent with the evidence of

record (Tr. 27). See 20 C.F.R. §§ 404.1527(c)(2), (3), (4), 416.927(d)(2), (3), (4); Combs, 459

F.3d at 652 ("[Treating physicians'] opinions receive great weight only if they are supported by

sufficient clinical findings and are consistent with the evidence.") (citations omitted). I conclude

there is substantial evidence to support the ALJ's finding that Dr. Hamaty's opinions were not

supported and inconsistent with the evidence of record.

Dr. Hamaty opined that Plaintiff could stand about one hour and sit about four hours in

an eight hour work day, lift up to 20 pounds occasionally and 10 pounds frequently, and that

Plaintiff had a variety of postural and environmental limitations (Tr. 513). Dr. Hamaty also

opined that Plaintiff would have to elevate his leg occasionally and change position more than

once every two hours, that he had neuro-anatomic distribution of pain, and that he had an

inability to perform fine and gross movements (Tr. 513, 515). Dr. Hamaty further stated that, in

his opinion, Plaintiff's pain was severe (Tr. 513). As observed by the ALJ, Dr. Hamaty did not

explain or support his opinions with clinical signs or laboratory findings as required (Tr. 27, 513,

515). Dr. Hamaty listed Plaintiff's diagnoses in one of his opinions without identifying "specific

clinical presentation" that would support his opinions (Tr. 27, 513, 515). This provided the ALJ

one reason to reject Dr. Hamaty's opinions, because he failed to support his opinions with the

necessary objective evidence. See 20 C.F.R. §§ 404.1527(c)(2), (3), 416.927(c)(2), (3); Combs,

17

459 F.3d at 652.

The ALJ also had good cause to reject Dr. Hamaty's opinion because it was inconsistent with other evidence of record (Tr. 27). 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4); Combs, 459 F.3d at 652. Dr. Hamaty opined Plaintiff had severe pain, however, examiners, including those at the VA, consistently noted Plaintiff was in no acute distress (Tr. 27, 28, 351, 410, 421, 426, 433, 464, 635, 657, 667, 677). Dr. Miller's records also undermine Dr. Hamaty's opinions. They show Plaintiff's pain was better and functional impairment was mild rather than severe (Tr. 28, 401, 499, 502, 513). Dr. Miller's records show Plaintiff's pain was nearly eliminated with medication and he had no restrictions in his daily activities (Tr. 28, 401, 499, 502). While he was receiving treatment with Dr. Hamaty, Plaintiff again reported that his medications were helpful for reducing his experience of pain and he experienced significant improvement after physical therapy (Tr. 612, 649). Dr. Hamaty's opinion that Plaintiff was limited to standing for one hour in an eight hour day was inconsistent with Plaintiff's treatment records, which showed he had normal gait and station and could ambulate without limitation (Tr. 27, 28, 402, 405, 413, 421, 426, 503, 562, 653). Dr. Hamaty's opinions are also inconsistent with the fact that VA records showed Plaintiff had good muscle strength, normal movement in all his extremities, and normal motor function (Tr. 27, 350, 466, 597, 678). The consultative examination findings of Dr. Mullady also show that Plaintiff had normal muscle strength, and normal gait, normal manual dexterity, and normal grip strength (Tr. 28, 382).

The opinions of Drs. Hoag and Mullady provide substantial evidence of record which is inconsistent with Dr. Hamaty's opinions (Tr. 28). Dr. Hoag, another one of Plaintiff's treating physicians with the VA, submitted an opinion that directly contradicts Dr. Hamaty's opinion (Tr. 511, 515). In contrast to Dr. Hamaty, Dr. Hoag indicated Plaintiff had no neuro-anatomic

18

distribution of pain, no inability to perform fine and gross manipulation, that Plaintiff did not need to change positions more than once every two hours, and his pain was mild (Tr. 28, 511). Dr. Hamaty opined Plaintiff could only stand one hour and sit four hours in an eight hour day, while Dr. Mullady opined, based on his examination of Plaintiff, that he would be able to stand and/or walk up to four hours and sit at least six hours in an eight hour day (Tr. 383). Although Plaintiff argues Dr. Hamaty's opinions are supported by the evidence, (Doc. 13, Plaintiff's Brief at 6-7), I conclude substantial evidence supports the ALJ's finding because Dr. Hamaty failed to provide sufficient support for his opinion and his opinion which was inconsistent with other evidence of record (Tr. 27-28). The ALJ properly rejected Dr. Hamaty's opinions. The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secy of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

19

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for summary judgment (Doc. 12) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 14) be GRANTED.

(3) The case be DISMISSED. [3]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).